**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PATRICIA D. GRIFFIN; MICHAEL E.
POOLE; DAVID W. WRENCH;
PHILLIP A. ZIADY; REBECCA M.
ZIADY; FRANKIE BAILEY; RICKY V.
BOWLING; DARIN W. S. BRADLEY;
VIRGINIA K. BRUCHI; TIMOTHY WARD
BULLOCK; REBECCA A. CLAUSS;
BOBBY S. COCKRELL; CHRISTOPHER
ALLEN COLANGELO; STUART DOUGLAS
COWARD, IV; THOMAS EDWARD
DAVENPORT, II; TROY A. DAVIS;
SCOTT PETER DEL POZZO; PETER C.
EURE, JR.; EDITH P. EVANS; THOMAS

TROY GARDNER; PATSY O. GENTRY;
MARK D. GOTTLIEB; JEFFREY STEPHEN
HAMERSTEIN; RICHARD G. HARDIN;
CHRISTOPHER D. HENDGES; ROHN F.
HULL; AMY ELIZABETH HUMPHREY;
FREDERICK C. HUTCHINS; MARK
KEVIN JUSTICE; JOSEPH S. KIMREY;
J. PAUL KUMHYR; WILLIAM S.
LANDON; CURTIS L. LOWE; DAVID
WILLIAM MINOR; DWIGHT E. MINOR;
EDWARD DENNIS MOXIN; MICHAEL
WILLIAM NORTON; BRYAN EVERETT
PERRY; WALLACE EARL PIPER;

No. 97-1136

CHRISTOPHER PAUL PITRE; ROBERT D.
POWERS; JERRY B. RADFORD; JOSEPH
W. ROBBINS, JR.; DWAYNE C. SMITH;
SCOTT C. TOTH; LEE M. VAN VLEET;
ARDIE C. WATKINS; PHILIP WAYNE
WHEELER; SEAN ROIBIN WOOLRICH,
Plaintiffs-Appellants,

v.

WAKE COUNTY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-96-281-5-BO)

Argued: March 6, 1998

Decided: April 27, 1998

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
CLARKE, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Michael and Senior Judge Clarke joined.

_____

**COUNSEL**

**ARGUED:** Marvin Schiller, Raleigh, North Carolina, for Appellants.
Shelley Tager Eason, WAKE COUNTY ATTORNEY'S OFFICE,
Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael R. Fer-

rell, WAKE COUNTY ATTORNEY'S OFFICE, Raleigh, North Carolina, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

A class of emergency medical technicians (EMTs) employed by Wake County, North Carolina, allege that the County erroneously paid them a half-time overtime premium according to the "fluctuating workweek" pay plan rather than the standard time-and-a-half overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1). Finding no violation of the FLSA, we affirm the judgment of the district court dismissing the suit.

I.

Plaintiffs are or were employed by the County as EMTs. According to a preset written schedule, the County's EMTs work twenty-four hours on, twenty-four hours off, twenty-four hours on, twenty-four hours off, twenty-four hours on, and then ninety-six hours (four days) off. Thus, the EMTs work either forty-eight or seventy-two hours in any given week throughout the year.

Since February 1, 1990, the County has utilized the"fluctuating workweek" pay plan, a recognized method of compensation under the FLSA. See 29 C.F.R. § 778.114. The plan allows employees the advantages of a base salary irrespective of the hours worked along with some overtime pay for hours in excess of forty per week. The system enables the employer to place workers on a variable schedule tailored to the nature of their work without incurring prohibitive overtime costs for weeks in which the hours are the longest.

Under this plan EMTs are paid a flat weekly salary as straight-time pay for the hours they work each week, whether forty-eight, seventy-two, or some other number. In addition, EMTs are paid an overtime premium of one-half their regular hourly rate for hours worked in excess of forty per week. If EMTs do not work all their scheduled

3

hours, the County deducts time from available sick leave and vacation balances.

Plaintiffs filed suit alleging that the County could not avail itself of the fluctuating workweek plan (1) because EMTs work a set, alternating schedule rather than irregular hours each week and (2) because the plan was "unilaterally imposed." Plaintiffs subsequently sought to add two other allegations to the complaint: (1) that EMTs lacked the requisite "clear mutual understanding" of the fluctuating workweek plan and (2) that the County impermissibly deducted from vacation and leave balances when EMTs worked less than their scheduled hours. The district court granted the County's motion to dismiss under Fed. R. Civ. P. 12(b)(6). Reasoning that the EMTs could not prevail on any of their claims, the court denied plaintiffs' motion to amend the complaint on grounds of futility and denied plaintiffs' motion for partial summary judgment. The EMTs now appeal.[1]

II.

This circuit has considered the fluctuating workweek pay plan in several recent cases. Flood v. New Hanover County outlined the conditions for using the plan:

> The language of section 778.114 suggests that an employer must meet the following requirements before it can pay an employee pursuant to the fluctuating workweek method: 1) the employee's hours must fluctuate from week to week; 2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week; 3) the fixed amount must be sufficient to provide compensation at a regular rate not less than the legal minimum wage; 4) the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked; and 5) the employee must receive a fifty percent overtime premium in addition to the

_____

[1] The EMTs do not appeal the dismissal of their claim that they were retaliated against for filing this FLSA action.

4

fixed weekly salary for all hours that the employee works in excess of forty during that week.

125 F.3d 249, 252 (4th Cir. 1997) (citing 29 C.F.R.§ 778.114; Condo v. Sysco Corp., 1 F.3d 599, 601-02 (7th Cir. 1993)). Flood also confirmed that "section 778.114 does not represent an `exception' to FLSA. It merely provides an alternative means by which an employer can determine its employees' regular and overtime rate of pay." Id. In their original and proposed amended complaints, the EMTs allege several violations of section 778.114.

A.

First, the EMTs charge the County has not satisfied the first Flood condition, that their "hours must fluctuate from week to week." 125 F.3d at 252; see also 29 C.F.R. § 778.114. The EMTs assert that because their work schedule fluctuates in a predictable manner, rather than in a wholly irregular and unpredictable manner, the County cannot use the fluctuating workweek pay plan. Flood rejected an identical claim, adopting the position of the Wage and Hour Division of the Department of Labor "that section 778.114 does not require an unpredictable schedule," 125 F.3d at 253. The regulation merely requires a schedule that fluctuates, as the EMTs' unquestionably does.

B.

The EMTs next allege a violation of the fourth Flood condition, that "the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked." Id. at 252; see also 29 C.F.R. § 778.114. This claim also fails.

In the original complaint the EMTs object that the County "unilaterally imposed" the fluctuating workweek pay plan. Plaintiffs appear to suggest that there was no "clear mutual understanding" of the plan because they were not asked to consent to the plan, but rather were told about it. But this argument confuses understanding with agreement, and the regulation speaks only in terms of the former. We are unable to find, and the EMTs have not identified, any case in which

5

a court has required that employees consent to the fluctuating work-week plan to satisfy section 778.114 -- employees need only under-stand it.

In their amended complaint the EMTs refine the claim that they lack the "clear mutual understanding" of the fluctuating workweek plan required by section 778.114. This circuit confirmed in Bailey v. County of Georgetown that this prong of section 778.114 only requires employees to understand the essential feature of the fluctuat-ing workweek plan -- "that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 94 F.3d 152, 156 (4th Cir. 1996) (quoting 29 C.F.R. § 778.114). This basic message was communi-cated to Wake County's EMTs in several ways.

When the fluctuating workweek pay plan was implemented in 1990, the County took pains to explain it to employees. The plan was introduced at mandatory employee meetings, at which EMTs received an explanatory memorandum from the County's Emergency Medical Services Director, Gerald Brown. This memorandum indicates -- twice -- that the weekly base salary reflects straight-time pay for "whatever" number of hours were worked during the week and pro-vides sample calculations of overtime under the plan. Plaintiffs make much of the fact that some examples in the memorandum refer to forty-eight and seventy-two hours. This is hardly surprising, as it reflects the schedule EMTs customarily work. And the memorandum nowhere suggests that EMTs must work these hours, and not less, in order to receive their base salary. In fact, the memorandum plainly states "your weekly base salary reflects straight-time pay for whatever number of hours you work during the week." The Assistant Director for Operations of the County's Emergency Medical Services, Lin-wood E. Barham, provided this memorandum to EMTs hired after the fluctuating workweek plan went into effect. He also explained the fluctuating workweek plan to all candidates for EMT positions, say-ing, in part: "To determine your weekly pay for regular hours worked, divide your annual salary by 52. You will be paid this figure even if you work less than forty hours." Thus either when the fluctuating workweek plan was adopted or when EMTs were hired, the County plainly communicated to its EMTs the essence of the plan: EMTs

6

would receive the same amount of base pay each week they worked any regular hours, regardless of the number of hours worked. Moreover, the County took the additional step of asking EMTs to sign a copy of the explanatory memorandum, indicating "The Fluctuating Workweek Pay Plan (29 C.F.R. 778.114) has been explained to me and I have had an opportunity to have any questions answered." Written acknowledgments are not required to satisfy section 778.114. Bailey, 94 F.3d at 156 ("Nor do the regulation and the FLSA in any way indicate that an employer must secure from its employees written acknowledgments indicating that the employees' pay plan has been explained to them."). But securing such acknowledgments is certainly probative of the employees' clear understanding of the fluctuating workweek plan. See Highlander v. K.F.C. Nat'l Management Co., 805 F.2d 644, 648 (6th Cir. 1986) (finding clear mutual understanding when employee signed form explaining calculation of overtime under the fluctuating workweek method); cf. Condo, 1 F.3d at 602 n.4 (noting importance of the fact that employment contract contained chart illustrating method of overtime pay). By taking this extra step, the County further established its employees' clear understanding of the fluctuating workweek plan.

Nor can we overlook the fact that Wake County implemented the fluctuating workweek plan nearly eight years ago. In these eight years the EMTs have not identified a single instance of the County paying an EMT less than his full salary for a week in which he performed any regular work. Thus, since 1990, the EMTs have received a regular lesson -- in the form of their paychecks -- about how the fluctuating workweek plan operates. This circuit noted in Monahan v. County of Chesterfield that "an employer can also demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures." 95 F.3d 1263, 1275 n.12 (4th Cir. 1996). The EMTs lived with the fluctuating workweek plan for nearly six years before filing this lawsuit in 1996. Thus "it is clear from [the EMTs'] actions that [they] understood the payment plan in spite of after-the-fact verbal contentions otherwise." Id. at 1281 n.21.

The EMTs seek to shore up their claims with the County's so-called "admission" that the pay plan is confusing and with the charge that some supervisors misunderstood the details of overtime calculation under the plan. But this argument reads too much into the

7

requirement of a "clear mutual understanding" outlined in section 778.114. <u>Bailey</u> clarified that "[n]either the regulation nor the FLSA in any way indicates that an employee must also understand the manner in which his or her overtime pay is calculated." 94 F.3d at 156. That is to say, the regulation does not require an employer to make all employees personnel specialists. "Further, we do not find that the FLSA places the burden on the employer to hold an employee's hand and specifically tell him or her" precisely how the payroll system works, particularly "if that fact can be easily gleaned from employment policies, practices, and procedures," <u>Monahan</u>, 95 F.3d at 1275. It is enough if, as here, the employer "provide[d] its employees with a reasonably clear and accurate explanation of their compensation," <u>Roy v. County of Lexington</u>, 928 F. Supp. 1406, 1419, <u>vacated in part on other grounds</u>, 948 F. Supp. 529 (D.S.C. 1996), <u>aff'd</u>, ___ F.3d ___, 1998 WL 170143 (4th Cir. Apr. 14, 1998), and paid its employees according to that system of compensation, <u>Monahan</u>, 95 F.3d at 1275, 1281.

In light of the diligent efforts the County took to inform the EMTs about the fluctuating workweek plan, and in the face of the County's careful administration of the plan over eight years, plaintiffs cannot now claim that they have never understood they would receive the same base salary each week they worked, whether it was a short or long one. Any misunderstanding of the plan's details is certainly not due to the County's lack of trying to explain it. A challenge to the County's entire pay system cannot proceed on the basis of an occasional misstatement or alleged confusion about the technical details of administering the fluctuating workweek plan. If it could, nearly every employer who uses this plan would be open to a lawsuit based on little more than "after-the-fact verbal contentions" that employees do not understand the plan in all of its particulars.**2** <u>See id.</u> at 1281 n.21.

_____

**2** While the EMTs have alleged that they did not understand the complicated details of the plan, this alone is insufficient. The regulation requires a clear mutual understanding of only the basic message that employees will be paid a fixed amount of straight-time weekly pay if they work any regular hours during the week. The regulation does not require an understanding of anything more. Because the EMTs have not alleged that they lacked a clear mutual understanding of this essential feature of the fluctuating workweek plan, the regulation is satisfied. As a result, they fail to state a claim upon which relief may be granted.

C.

Finally, the EMTs allege that deductions from available leave or vacation balances taken when they did not show up for scheduled shift work somehow violate section 778.114. Specifically, the EMTs complain:

> Whenever I took a one (1) week vacation which occurred during a week when I was scheduled to work seventy-two (72) hours, my earned vacation time was subtracted by seventy-two (72) hours.

> Whenever I took a one (1) week vacation when I was scheduled to work forty-eight (48) hours, my earned vacation time was subtracted by forty-eight (48) hours.

> If I took vacation for part of a week when I was scheduled to work for seventy-two (72) hours, but only worked forty-eight (48) hours, my earned vacation time was subtracted by twenty-four (24) hours.

> The deduction of earned sick time would occur on the same basis.

Plaintiffs do not allege that their pay was ever docked for these absences. And section 778.114 does not mention leave or vacation at all -- it only governs the pay that employees receive. See 29 C.F.R. § 778.114. Likewise, the authority on which plaintiffs rely, a Department of Labor Letter Ruling dated May 18, 1966, and Yourman v. Dinkins, 865 F. Supp. 154, 165 & n.20 (S.D.N.Y. 1994), aff'd, 84 F.3d 655 (2d Cir. 1996), vacated sub nom. Giuliani v. Yourman, 117 S. Ct. 1078 (1997), addresses only deductions from pay, not leave or vacation.[3] Wake County has voluntarily provided its EMTs with the extra benefit of paid vacation and sick leave. The EMTs now claim that the County violates federal law when it requires its employees to draw down their accrued leave or vacation balances when they exer-

_____

[3] Deductions from pay are also consistent with the fluctuating work-week plan, if the employee does no work at all in a given week. See Department of Labor Letter Ruling dated May 18, 1966.

9

cise this benefit. Unlike deductions from base pay, such deductions from leave simply do not constitute a violation of section 778.114. To countenance the EMTs' claim to the contrary would beg the question how, if at all, any system of earned vacation time is to operate if an employer may not deduct from it when an employee takes a vacation.

III.

The EMTs' original complaint was properly dismissed as legally insufficient. The EMTs' amended complaint fails to cure this deficiency, so the district court properly denied leave to amend. We therefore affirm the judgment of the district court.

AFFIRMED