**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHELBY M. ANDERSON; DEVON C.
BAIRD; FRANKIE LEE BOAN, JR.;
PATRICK G. BOONE; JERRY WOODROW
BROWN; MARVIN L. BROWN; ROBERT L.
BROWN; FERRIS EDWARD CATOE, III;
KIRK E. CORLEY; DANIEL S. DABNEY;
DAVID WILLIAM DAVIS; J. DOWEY, JR.;
CHERRIE M. GRIGGS; GLENN HOPPLE;
RANDALL CRAIG HUDSON; VIRGINIA H.
HUDSON; THOMAS JEFF JACKSON, JR.;
STEVEN KNAFELC; GLENN MARTIN;
FRANK G. MCLEOD, JR.; JERE T. MILES;
JAMES L. MILLER; TODD HOWELL
MOZINGO; MARSHALL M. MINICH;
ANDREW S. MORRIS; WARREN MOSELEY;
WILLIAM G. MOSELEY; JESSE LAMAR
POPE; VIRGIL L. REAMES; SYLVESTA

ROBINSON; DAVID THOMLEY; JAMES E.                    No. 97-2601
THOMLEY; ERIC N. TISDALE; CHARLES
WHITE; HAMPTON WRIGHT; LYNDON
ALEXANDER; DONALD FARROW; KELLY
JOHNSON; JOHN C. TOLLISON; JAMES G.
ROBINSON; H. RAY RUTLEDGE,
Plaintiffs-Appellants,

STEPHEN D. VINCENT,
Plaintiff,

v.

COUNTY OF KERSHAW; JERRY L.
HORTON, former Sheriff of Kershaw
County; STEVE MCCASKILL, as current
Sheriff of Kershaw County,
Defendants-Appellees.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-95-4019-10-3)

Argued: October 29, 1998

Decided: February 8, 1999

Before WILKINSON, Chief Judge, WILLIAMS, Circuit Judge,
and THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Kurt Kendree, LAW OFFICES OF WILLIAM
STUART DUNCAN, P.A., Georgetown, South Carolina, for Appel-
lants. Stephen Terry Savitz, GIGNILLIAT, SAVITZ & BETTIS,
Columbia, South Carolina, for Appellees. **ON BRIEF:** William Stu-
art Duncan, Joe M. Crosby, LAW OFFICES OF WILLIAM STUART
DUNCAN, P.A., Georgetown, South Carolina, for Appellants. Linda
Pearce Edwards, GIGNILLIAT, SAVITZ & BETTIS, Columbia,
South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Forty-two current and former deputy sheriffs of Kershaw County,
South Carolina, brought suit challenging the legality of their half-time

2

overtime premiums paid pursuant to a "fluctuating workweek" schedule, 29 C.F.R. § 778.114. Specifically, plaintiffs alleged that they lacked the required "clear mutual understanding" that their salary was compensation for all hours worked. Because we find that such an understanding sprang from a decade of consistent practice, we affirm the district court's grant of summary judgment for the defendants.

I.

The deputies were paid by the County pursuant to a compensation plan implemented in 1986 to meet the demands of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, in the wake of the Supreme Court's decision in Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1985). The County's plan provided for a "fluctuating workweek" salary plan whereby the deputies were paid a fixed salary for all hours worked. The plan also provided for the payment of half-time overtime when the officers worked more than 171 hours in a 28 day period. See 29 C.F.R.§ 553.230(b) (permitting a 28 day work period for law enforcement officers). The deputies received compensation at one-half their hourly rate for each hour worked in excess of 171.*

The deputies were consistently paid under the terms of the fluctuating workweek pay plan since its adoption. They were told their salary and received it in full whether they worked more or less than 171 hours. The deputies also knew they received compensation for over-

_____

*Under the fluctuating workweek plan, the hourly rate will vary from week to week depending upon the actual number of hours worked. For example, assume that a deputy's salary is $1810 per 28 day period and the deputy receives overtime premiums after 171 hours. If the employee works 181 hours, he will receive half-time premiums for 10 hours of overtime. To calculate the hourly rate, the salary is divided by the number of hours actually worked. Here, $1810 is divided by 181 hours, yielding an hourly rate of $10. The overtime premium is thus one-half of $10, or $5 per hour of overtime. If, however, the deputy works 191 hours, the premium is reduced. The hourly rate is now $1810 divided by 191, or about $9.48. The half-time premium is thus $4.74. The overtime premium is inversely proportional to the number of overtime hours worked. See generally 29 C.F.R. § 778.114.

3

time. No written explanation of the method of calculating overtime payments, however, was provided to the deputy sheriffs until December 8, 1995. Nonetheless, the deputies were aware of the premiums, and some frequently complained about the amount of the premiums, especially the fact that the premium decreased as overtime increased.

The deputies filed suit on December 22, 1995, against the County, the former Sheriff, Jerry L. Horton, and the current Sheriff, Steve McCaskill. The deputies challenged the legality of the plan under the FLSA. Specifically, they asserted that they did not have the requisite "clear mutual understanding" that they were to receive a fixed weekly salary regardless of the number of hours worked. 29 C.F.R. § 778.114(a). Without such an understanding, the County was required to pay overtime premiums of one and one-half their hourly rate for all overtime hours worked. See FLSA, 29 U.S.C. § 207. The deputies sought monetary and injunctive relief. After discovery, the parties filed cross-motions for summary judgment. The district court found no factual basis in the record for the deputies' allegations. Forty-one of the deputy sheriffs appeal.

II.

Under the FLSA, an employer may use a fluctuating workweek pay plan so that it can "place workers on a variable schedule tailored to the nature of their work without incurring prohibitive overtime costs for weeks in which the hours are the longest." Griffin v. Wake County, 142 F.3d 712, 714 (4th Cir. 1998). The prerequisites to using this compensation method are set forth in 29 C.F.R. § 778.114. Among them, the employer and employee must have "a clear mutual understanding . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 C.F.R. § 778.114(a). In other words, "the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked." Flood v. New Hanover County, 125 F.3d 249, 252 (4th Cir. 1997).

The deputies assert that they believed that their fixed salary compensated them for all regularly scheduled hours and not, as the regula-

4

tion requires, for all hours worked. They note that they never received a written explanation of their pay plan. They also argue that Kershaw County's evidence -- that the deputy sheriffs consistently received paychecks using the half-time method of overtime compensation -- is insufficient. Thus, the deputies argue that section 778.114(a)'s "clear mutual understanding" requirement was not met and the County was not entitled to compensate its employees under the fluctuating workweek plan.

We disagree. In Griffin v. Wake County, this court held that an employer could meet the burden of establishing a clear mutual understanding in several ways. Although in that case the employer distributed a written memorandum explaining the pay plan, we noted that the county's consistent administration of the plan provided an additional way to demonstrate the existence of such an understanding.

> [W]e [cannot] overlook the fact that[the] County implemented the fluctuating workweek plan nearly eight years ago. In these eight years the [plaintiffs] have not identified a single instance of the County paying [a plaintiff] less than his full salary for a week in which he performed any regular work. Thus, since 1990, the [plaintiffs] have received a regular lesson -- in the form of their paychecks-- about how the fluctuating workweek plan operates. This circuit noted in Monahan v. County of Chesterfield that"an employer can also demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures." 95 F.3d 1263, 1275 n.12 (4th Cir. 1996). The [plaintiffs] lived with the fluctuating workweek plan for nearly six years before filing this lawsuit in 1996. Thus, "it is clear from [the plaintiffs'] actions that[they] understood the payment plan in spite of after-the-fact verbal contentions otherwise." Id. at 1281 n.21.

Griffin, 142 F.3d at 716-17.

The circumstances relied upon by the court in Griffin are present here in stronger form. The deputy sheriffs knew their annual salary. For an entire decade before filing suit, the County consistently paid them their full salary for each work period, whether their actual hours

worked fell above or below 171 hours. Additionally, the deputies accepted a check every two weeks for the same non-fluctuating base amount. They also received half-time overtime for all hours worked over 171. Thus, like the employees in Griffin , they "have received a regular lesson -- in the form of their paychecks-- about how the fluctuating workweek plan operates." Id.

This lesson appears to have been learned. In their depositions, the deputies frequently admitted knowing the details of their compensation package, including their annual salary and that their overtime premiums decreased with the number of hours worked. Because a decade of invariable practice gave rise to a clear mutual understanding that the deputies would receive their full salary without regard to the hours actually worked, the judgment of the district court is hereby

AFFIRMED.

6