Doreen RAINEY, Plaintiff,

v.

AMERICAN FOREST AND PAPER ASSOCIATION, INC., Defendant.

No. CIV. A. 97–2115–LFO.

United States District Court, District of Columbia.

Oct. 19, 1998.

Nils George Peterson, Arlington, VA, Brian Cooper Plitt, Washington, DC, for Plaintiff.

Robert M. Goldrich, Caroline M. Austin, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, Cynthia Heckathorn Evans, Robert Alan Kirshner, for Defendant.

### ORDER

OBERDORFER, District Judge.

Upon consideration of particular undisputed facts as to plaintiff's role during the course of her employment by defendant, and of the relevant regulations, 29 C.F.R. §§ 541.2, 541.103, 541.205, 541.207, 778.114, and for reasons stated from the bench and in a memorandum to be filed, it is this 15th day of July, 1998, hereby

ORDERED: that plaintiff's motion for partial summary judgment as to liability is GRANTED; and it is further

ORDERED: that defendant's motion for partial summary judgment as to damages is DENIED; and it is further

DECLARED: that the information in the affidavit of Melissa M. Kurtz, filed by defendant in support of its opposition to plaintiff's motion for summary judgment as to liability, could and should have been provided to plaintiff through defendant's corporate representative before plaintiff filed its motion for summary judgment, and is therefore unavailable to defendant to traverse plaintiff's motion, see Fed.R.Civ.P. 30(b)(6); and it is further

DECLARED: that even if the Kurtz affidavit were received into the record for purposes of summary judgment, it and the other elements of defendant's "showing" in opposition to plaintiff's motion would not effectively traverse plaintiff's "showing" that her position throughout her employment by defendant was not-exempt under §§ 207 and 213 of the Fair Labor Standards Act, 29 U.S.C. § 207 et seq. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.") (quoting Fed.R.Civ.P. 56(c)); and it is further

DECLARED: that no reasonable jury could find that there was a "clear mutual understanding of the parties that the fixed salary [wa]s compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number," 29 C.F.R. § 778.114 (parentheses in original); and it is further

DECLARED: that, during the period November 1995 through January 1997, defendant was obligated, but failed, to pay plaintiff proper overtime for hours worked in excess of forty (40) per week; and it is further

DECLARED: that plaintiff is entitled to an award of back pay in an amount equal to one and one-half times her regular rate of compensation for every hour she worked in excess of 40 per week during that period; and it is further

DECLARED: that plaintiff is entitled to liquidated damages in an amount in addition to, and equal to, the award of back pay; and it is further

ORDERED: that on or before July 24, 1998, the parties shall make a good faith effort to agree upon, and file a statement of, the number of overtime hours for which plaintiff is due compensation and the amount of back pay, liquidated damages, and any other award to which she is entitled pursuant

to the foregoing declarations; and it is further

ORDERED: that, in the event that the parties are unable to reach such an agreement by that date, each party shall, on or before July 27, 1998, file its own calculation in affidavit form of the proper award, the foregoing declarations considered.

## MEMORANDUM

On June 12, 1998, plaintiff Doreen Rainey moved for partial summary judgment as to liability, seeking a declaratory judgment that defendant American Forest and Paper Association, Inc. violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (1988), by failing to pay her proper overtime for "excess" hours she worked during part of her employment by defendant. On June 19, defendant moved for partial summary judgment as to damages, seeking a judgment that to the extent that plaintiff is entitled to any damages, they should be calculated according to the so-called fluctuating workweek method set forth at 29 C.F.R. § 778.114 (1998). Both motions were opposed, and a hearing was held July 14, 1998, at which time plaintiff's motion was granted and defendant's motion was denied. The reasons underlying these judgments are set forth herein.

### I.

### A.

■ The Fair Labor Standards Act ("the Act") requires that employees be paid at a rate of one and one-half times their "regular rate" for hours worked in excess of forty (40) in one week unless they are subject to certain enumerated exemptions. 29 U.S.C. § 207(a) (1988). The burden of proving that an employee is exempt from § 207(a) falls squarely on the employer. Corning Glass Works v. Brennan, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); Roney v. United States, 790 F.Supp. 23, 26 (D.D.C. 1992). In the instant case, plaintiff was hired by defendant in June 1995 as a personnel assistant in its human resources department. In the personnel position, which defendant classified as non-exempt from § 207(a), plaintiff was responsible for such clerical work as adding and deleting employee' insurance claims, updating the human resources database, answering phones, and typing letters. She was paid a fixed amount for the first 37.5 hours she worked per week, and was paid overtime in accordance with the one and one-half time formula in § 207(a). There is no dispute between the parties about this non-exempt classification or plaintiff's receipt of overtime compensation.

However, in October 1995 defendant underwent a major corporate reorganization. It terminated forty positions and combined its accounting department with its human resources department. In the wake of the shuffling, plaintiff retained her human resources duties as personnel assistant, but took on the payroll work of a terminated accounting department employee who had been classified as non-exempt from the Act. Plaintiff's characterization of her payroll work as "clerical" is not traversed by defendant. Pl.'s Stmt. of Mat. Facts ¶ 9. Nonetheless, defendant reclassified plaintiff as exempt from § 207(a), and began paying her a flat amount per week. Except for a two-week period during November 1995, the circumstances of which have not been explained by either party, plaintiff received no overtime compensation after the reorganization.

Following the initial augmentation of her duties, plaintiff continued to assume more responsibilities. First, in June 1996 she began performing some of the duties that had belonged to Michelle Merkt, a human resources manager who left the organization. Sometime thereafter plaintiff was assigned some of the responsibilities previously given to Kitty Reilly, the director of human resources who apparently had stopped coming to work in June 1996 but who did not resign until November. Plaintiff received two raises during this period, one of twenty percent and one of ten percent, but still was not paid overtime. Plaintiff resigned from the employ of defendant on January 17, 1997.

The gravamen of plaintiff's complaint is that she was improperly classified as exempt from § 207(a) of the Act during the period between November 1995 and January 1997. Defendant counters plaintiff's allegations by contending that her compensation was limit-

ed by the administrative exemption set forth in § 213(a)(1) of the Act. The question presented by plaintiff's motion for partial summary judgment is whether there are no disputed issues of material fact such that it must be determined, as a matter of law, that plaintiff was improperly classified as exempt and unlawfully denied overtime compensation. The Court, as indicated at the July 14, 1998 hearing and in an Order of July 15, finds in plaintiff's favor.

## B.

Rule 56(e) of the Federal Rules of Civil Procedure provides that when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). It is well-settled that a moving party is entitled to judgment as a matter of law if the adverse party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, "a party is only entitled to summary judgment if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact." *Aka v. Washington Hospital Center,* 156 F.3d 1284, 1998 WL 698396, *3 (D.C.Cir. Oct.9, 1998) (en banc). In its opposition to plaintiff's motion for partial summary judgment, defendant relies on the factual allegations obtained from several sources: documents prepared by plaintiff during her employment by defendant; the deposition testimony of plaintiff; the deposition testimony of defendant's designated corporate representatives; and an affidavit of one of defendant's former employees, Melissa Kurtz ("Kurtz affidavit"). Because plaintiff challenges the validity of introducing the Kurtz affidavit into the record at the summary judgment stage, the Court defers consideration of its factual allegations. *See infra* I.C.

As noted above, the Fair Labor Standards Act establishes the default rule that employees are to be paid at a rate of one and one-half times their "regular rate" for hours worked in excess of forty (40) in one week, unless they are subject to certain exemptions enumerated in § 213. 29 U.S.C. § 207(a). In this case, defendant submits that plaintiff was subject to the so-called administrative exemption, which applies to individuals "employed in a bona fide ... administrative ... capacity." 29 U.S.C. § 213(a)(1). Consistent with the statutory mandate, *see* 28 U.S.C. § 213(a)(1), the Department of Labor ("DOL") has promulgated regulations establishing the necessary criteria for the administrative exemption to apply. Such regulations are set forth at 29 C.F.R. § 541.2 (1998), and provide in pertinent part:

> The term *employee employed in a bona fide administrative capacity* ... shall mean any employee:
>
> (a) Whose primary duty consists of ...
>
> (1) The performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers, ... and
>
> (b) Who customarily and regularly exercises discretion and independent judgment
>
> ....

29 C.F.R. § 541.2 (1999) (emphasis in original). Thus, to survive summary judgment as to liability, defendant must allege material issues of disputed fact suggesting that plaintiff's "primary duty" consisted of the "performance of office or non-manual work directly related to management policies or general business operations of [her] employer or [her] employer's customers," and that plaintiff "customarily and regularly exercise[d] discretion and independent judgment." *Id.*

The DOL regulations state that "it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103. *See also* 29 C.F.R. § 541.206 (employing definition articulated in § 541.103). However, the regulations also say that "[t]ime alone ... is not the sole test," and that an employee can be considered administrative if certain considerations—such as "the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, [and] his

relative freedom from supervision"—support such a conclusion. 29 C.F.R. § 541.103. The regulations define work "directly related to management policies or general business operations" as that which is "of substantial importance to the management or operation of the business," and indicate that the phrase applies to employees whose work "affects policy or whose responsibility it is to execute or carry it out." 29 C.F.R. § 541.205(a), (c).

As to the second prong of the standard, the regulations set out that "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a) (1998). The regulations make clear, though, that an employee who "merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met ..., is not exercising discretion and independent judgment within the meaning of § 541.2. This is true even if there is some leeway in reaching a conclusion ...." 29 C.F.R. § 541.207(c)(1) (1998). Viewed in the light of this regulatory framework, the documents and deposition testimony defendant has adduced do not raise material issues of disputed fact sufficient to defeat plaintiff's motion.

### 1.

■ To begin with, defendant argues that various documents created during plaintiff's tenure raise genuine issues of material fact "as to the nature of [her] duties." Def.'s Opp. at 9. Defendant first alludes to an internal application plaintiff submitted for the position of human resources manager, wherein plaintiff touted her "[k]nowledge of [defendant's] policies, procedures, practices and employees ...." Def.'s Mot. for Summ. J. Exh. M. While this assertion perhaps is suggestive of plaintiff's familiarity with "management policies" and "general business operations," it provides no information concerning the nature of plaintiff's *duties* and whether they *affect*—as the regulations require—such policies or operations. As a matter of law, then, · this statement falls

short of even alleging that plaintiff met the regulatory criteria for an administrative employee.

Defendant next invokes a November 1, 1996 memorandum from plaintiff to defendant's General Counsel Robert Kirshner, in which plaintiff requested a salary increase on the basis of her performance and assumption of additional responsibilities. Def.'s Mot. for Summ. J. Exh. N. Though it indeed lists additional tasks plaintiff took on after the departure of the human resources manager, the 1996 memorandum fails to bolster defendant's argument. First, plaintiff's statements in the memorandum do not—as they must to meet the statutory criteria—make any reference to whether the additional tasks she took on constituted her "primary dut[ies]." Second, even assuming primacy, plaintiff's statements do not allude to tasks that meet the twin statutory criteria of being *directly related to management policies*—in that they affect, execute, or carry them out—and requiring the exercise of discretion and independent judgment.

To begin with, several of the nine tasks listed in the memorandum fail to satisfy either of the two requirements. For example, the second task listed—conducting exit interviews—involved asking departing employees about their experiences and taking notes of their comments. While it may, as counsel suggested at the July 14 hearing, have entailed "discuss[ing] ... AF & PA's policy and procedures" and "questioning the employee about various matters related to their [sic] work," Trans. at 44, as a matter of law this duty did not affect, execute, or carry out management policy, nor require the exercise of discretion and independent judgment.

The same conclusion is applicable to the third task, writing/editing job postings and employment ads. Defendant does not dispute that plaintiff performed that duty only when instructed that job openings existed, or that plaintiff herself lacked the authority to decide that an employee needed to be hired. That plaintiff composed job postings from templates of "previous job descriptions," Depos. of Doreen Rainey at 143 ("Rainey trans."), does not demonstrate that she performed administrative functions within the

meaning of the DOL regulations. Other tasks listed in the November memorandum, such as COBRA administration (fourth), assisting employees and former employees with 401(k) loan requests/withdrawals/rollovers (fifth), and orienting eligible employees about the 401(k) and retirement plan (sixth), also fail to meet either criterion, as they involved helping employees avail themselves of company benefit options, not shaping or implementing management policy or exercising discretion or independent judgment.

The remaining four tasks listed in the memorandum arguably were related to management policies, but they did not, as a matter of law, require the exercise of discretion or independent judgment. The first task on the list was conducting new employee orientations; this may have involved executing policy, but it could not have entailed "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). Instead, plaintiff's undisputed account is that this function consisted of *handing out* copies of company policies and procedures, *reading them over* along with the new employee, *obtaining the employee's signature* to indicate she received the copies, and answering questions. Rainey trans. at 195. As a matter of law, this did not require the exercise of discretion or independent judgment. The same can be said of the seventh task, providing information and enforcing company policies and procedures. There is no indication in plaintiff's November 1 memorandum—and defendant does not contend—that performance of this task required weighing courses of conduct and selecting among them.

Similarly, defendant has made no allegation that plaintiff's discussion of confidential personnel issues with employees (eighth) involved anything more than listening to concerns and perhaps making suggestions about how to address them. Defendant has not alleged, for example, that plaintiff took any official action as a result of her confidential discussions, or that she altered or implemented company policy because of them. In fact, plaintiff admitted in responses to defendant's interrogatories that when she heard "complaints, concerns, conflicts and/or grievances," she "relayed these issues to Michelle Merkt or Margaret Reilly, or to other managers for resolution," Def.'s Opp. Exh. 12 at 8; defendant does not traverse this statement. The final item on the list—assisting the senior director in creating reports, spreadsheets, and special projects, including with regard to work with outside consultants and for preparation for audits and investigations—falls in the same category. While perhaps related to management policies in that it may have been carried out in conjunction with management personnel, this duty did not require plaintiff to do anything but carry out the instructions of her supervisor. As a matter of law, this did not require plaintiff to exercise discretion and independent judgment within the *meaning* of 29 C.F.R. § 541.207.

Defendant next argues that plaintiff worked in an exempt administrative capacity because, as she wrote in her November 1 memorandum, she "manage[d] one long term temporary employee." Def.'s Mot. for Summ. J. Exh. N. In support of this claim, defendant invokes *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982), where the court stated that "[t]he supervision of other employees is clearly a management duty." *Id.* at 226 (citing 29 C.F.R. § 541.102(b)). Defendant's argument is unavailing. First, defendant raises no allegation that plaintiff's management of one employee constituted her primary duty. Second, it makes no claim that plaintiff's management of one *temporary* employee involved formulation or execution of company policy, or that it required the exercise of discretion or independent judgment. Finally, the opinion in *Donovan* is dubious authority for defendant's proposition, as the court hinged its above-quoted statement on 29 C.F.R. § 541.102(b), which concerns the characteristics of an "executive capacity," not an administrative one.

At the July 14 hearing, defendant relied heavily on the factual information contained in a December 3, 1996 memorandum from Mr. Kirshner to plaintiff. Def.'s Mot. for Summ. J. Exh. Q. The Kirshner memorandum—dated roughly six weeks before plaintiff resigned—was styled as a response to a

list of "current job tasks" that plaintiff had provided to Mr. Kirshner several days earlier. *Id.* at 1–2. Working from the list plaintiff provided, Mr. Kirshner placed asterisks by the tasks that he said he "need[ed plaintiff] to focus most of [her] time on." *Id.* at 1. In large measure, the list that plaintiff compiled was the same as the list of nine tasks she detailed in her November 1 memorandum to Mr. Kirshner; as such, these repeat tasks do not raise genuine issues of material fact about the nature of plaintiff's employment capacity. *See supra* pp. 88–90.

The Kirshner memorandum contained descriptions of other tasks plaintiff performed, but these too fail to raise material issues of disputed fact. For example, at the hearing counsel asserted that the task of enrolling employees in and terminating them from company insurance plans involved "a certain amount of counseling and enforcement of AF & PA's policies." Trans. at 42, 45; Def.'s Mot. for Summ. J. Exh. Q at 2. Counsel did not identify the counseling and enforcement that plaintiff allegedly performed—aside from noting that Mr. Kirshner claimed she performed it, *see* Depos. of Robert Kirshner at 98 ("Kirshner trans.")—and offered no substantiating information to neutralize the reasonable inference that this task involved nothing more than the clerical work plaintiff had been doing as a non-exempt employee.

The same is true of counsel's assertion that "there is a certain degree of counseling and enforcement of AF & PA's policies" that goes along with medical insurance work, which consisted, *inter alia,* of updating on-line workstations, adding and deleting employees, and performing COBRA administration. Trans. at 43; *see also id.* at 45; Def.'s Mot. for Summ. J. Exh. Q at 2. While counsel elaborated that the medical insurance work "entailed counseling employees about when the insurance at their new company takes over, whether they want to go into COBRA, [and] the spouse's coverage," Trans. at 45, this vague description offers no detailed allegations about how this work could as a matter of law qualify as "of substantial importance to the management or operation of the business," 29 C.F.R. § 541.205(a), or as requiring the exercise of discretion or independent judgment.

Counsel also argued at the hearing that work concerning medical and dependent care reimbursement—which had an asterisk beside it on the Kirshner memorandum—"included a judgment as to whether or not specific expenses qualified under AF & PA's plan and the regulations;" this led counsel to conclude that "[t]his would clearly be an exempt duty." Trans. at 45. To the contrary, the DOL regulations elucidate that work that involves the type of judgment counsel described—judgment that, "even if there is some leeway in reaching a conclusion," entails "determin[ing] whether specified standards are met"—does not involve the exercise of discretion and independent judgment needed to satisfy the regulations. 29 C.F.R. § 541.207(c)(1). As a result, duties concerning 401(k) "loan requests, and withdrawals, and rollovers," Trans. at 46, which by counsel's admission entailed "having to answer whether or not you could overlap loans, and whether or not certain criteria have been met," *id.,* are not sufficient to trigger the statutory exemption.

Counsel also cited the task of writing letters to accompany quarterly statements about 401(k) accounts. *Id.* at 46–47. These letters, according to counsel, "explain[ed] what happened with [individuals'] accounts and how to … change a plan and various things that they could do with respect to loan requests, withdrawals and rollovers." *Id.* at 47. Counsel's allegations about these explanation letters may not describe rote clerical functions, but they are insufficiently probative of duties that affect, execute, or carry out management policies. 29 C.F.R. § 541.205(c). They suggest, instead, that plaintiff conveyed information to other employees, a role that falls short of work that affects management or business operations. *Id.* at § 541.205(a). Similarly, counsel posited insufficient factual allegations about the job of orienting employees, upon eligibility, about the 401(k) plan. Trans. at 47. While such a task requires knowledge of the plan, counsel's statement that "[v]arious determinations need to be made in conjunction with AF & PA's policy and the rules and regula-

tions," *id.*, does not raise genuine questions about whether plaintiff did anything more than advise employees upon "determin[ing] whether specified standards are met." 29 C.F.R. § 541.207(c)(1).

The remaining tasks in the Kirshner memorandum fail to carry defendant's burden to defeat summary judgment. Most, including calculating and verifying time sheets, sending out evaluation forms to managers, replacing lost medical cards, and running reports about loan repayments, have not been alleged to be administrative within the meaning of the regulations. Others, such as preparing audit paperwork and answering employee inquiries, do not meet the statutory criteria, as those like the former do not require the exercise of discretion and independent judgment, while those like the latter do not rise to the level of affecting or executing management policy. Trans. at 48–49; *see infra* pp. 25–26. Finally, the only task that has the potential to qualify as being related to management policy—improving the process of collecting information on time sheets—did not constitute plaintiff's primary duties and did not necessarily require the exercise of discretion and independent judgment. Trans. at 48. As a result, the Kirshner memorandum does not allege sufficient disputed issues of material fact to overcome plaintiff's motion for summary judgment.

The final document upon which defendant relies, a race discrimination complaint plaintiff filed with the Equal Employment Opportunity Commission, makes no material contribution to defendant's effort to defeat plaintiff's motion. Def.'s Opp. at 11. In the charge, plaintiff claims that though she assumed the "managerial" duties outlined in her November 1996 memorandum, she was "never promoted" and was "denied compensation and recognition for these additional duties." Def.'s Mot. for Summ. J. Exh. R. Defendant invokes this statement in the hopes of contradicting plaintiff's "current argument that she performed only clerical, non-discretionary tasks." Def.'s Opp. at 11. Yet the EEOC charge is functionally indistinguishable from plaintiff's November 1996 memorandum, in that it says nothing about plaintiff's primary duties and details no new

tasks properly deemed administrative. Accordingly, this documentary evidence—like that accompanying it—is insufficient to raise material issues of disputed fact.

2.

█ The second prong of defendant's opposition is grounded in plaintiff's deposition testimony. These references, however, are likewise insufficient for two reasons. First, defendant alludes to numerous statements that merely repeat factual allegations already determined not to raise genuine issues of material fact. *See supra* I.B.1. In this category are plaintiff's statements that she assumed some of the departing human resources manager's duties and that she conducted employee orientations and exit interviews. Def.'s Opp. at 12. Second, defendant's remaining citations to plaintiff's deposition testimony are either misrepresentations of the transcript or insufficient to raise disputed issues of material fact. For instance, citing page 139 of plaintiff's deposition transcript, defendant contends that plaintiff "admitted that she helped determine who was a qualified applicant by screening resumes." *Id.* Plaintiff, in fact, made no such representation. Instead, when asked whether she performed the function of "[r]ecruiting and screening qualified applicants," plaintiff replied: "Actually more of placing ads in the paper for applicants and sending information for agencies and *receiving applications or resumes to pass on* to the hiring manager or to [the human resources director]," Rainey trans. at 139 (emphasis added). Not only, then, is defendant's characterization inaccurate, but plaintiff's actual response described a rote, ministerial function that could not be labeled "administrative," Similarly, while defendant states that plaintiff "signed letters on behalf of AF & PA extending offers of employment," Def.'s Opp. at 12, plaintiff clarified at her deposition that at most she "probably could have" signed letters of employment, Rainey trans. at 165, but that she "did not interview candidates or decide whether we should hire people or anything like that." *Id.* at 177. In light of this testimony, which has not been challenged, as a matter of law defendant cannot successfully argue that signing a letter implementing a

superior's decision is an administrative task within the meaning of the DOL regulations.

Other deposition statements that defendant invokes simply do not describe administrative tasks that qualify for the statutory exemption. For instance, defendant cites to plaintiff's testimony that she had authority to sign invoice requests for amounts less than $500. Rainey trans. at 162. Plaintiff indeed made such a statement, but only after asserting that before she signed the invoice she asked her superior whether the invoice items were "something we wanted in the office"; only when the superior "said yes" would plaintiff "sign for the invoice to be paid." *Id.* Even assuming that signing an invoice were a duty that affects, executes, or carries out company policy, plaintiff's full description—which is not disputed by defendant—makes clear that she exercised no discretion or independent judgment when carrying out this task.

Defendant's final contention with respect to plaintiff's deposition testimony concerns her statement that she spent 35% of her time on payroll duties, 35% on human resources work, and 10% each on implementation of the Cafeteria Plan, the Medical Plan, and the Insurance Plans. Def.'s Opp. at 12 (citing Rainey trans. at 105–07). This, however, fails to raise disputed factual issues concerning the nature of plaintiff's work. First, defendant concedes that the payroll duties comprising 35% of plaintiff's work were non-exempt. Def.'s Opp. at 13. Further, it already has been established that the human resources work described in plaintiff's November 1996 memorandum is not administrative. Finally, implementation of the Cafeteria, Medical, and Insurance Plans meets neither prong of the regulatory standard, as plaintiff's untraversed contemporaneous description of it, *see* Def.'s Opp. Exh. 3, illustrates that it was a "routine clerical dut[y]" that required mere application of one's knowledge "in following prescribed procedures or determining which procedure to follow, or ... determin[ing] whether specified standards are met ...." 29 C.F.R.

§§ 541.205(c)(2), 541.207(c)(1). As such, it cannot, as a matter of law, require the exercise of discretion or independent judgment. Plaintiff's deposition testimony therefore fails materially to advance defendant's effort to defeat summary judgment.

3.

Defendant attached to its opposition papers excerpts of deposition testimony of its corporate representatives, but did not make specific reference to them in the relevant textual sections. This decision is unsurprising. Though designated by the corporation to speak on its behalf, representatives Robert Kirshner and Michael Hoagland were not able to allege disputed issues of material fact to traverse plaintiff's contentions about the legal implications of her duties. Mr. Hoagland, to begin with, was not designated to answer specific questions concerning plaintiff's employment, as he was not hired by defendant until after plaintiff resigned. It therefore is expected that he would profess no personal knowledge about the particular circumstances of plaintiff's employment. *See* Depos. of Michael Hoagland at 12, 26, 27, 29, 52, 65, 66.

Mr. Kirshner, on the other hand, was designated by defendant to respond to inquiries concerning, *inter alia,* "[p]laintiff's employment history with [d]efendant [sic] including positions held, duties, hours worked, supervisors and representations made to [p]laintiff by defendant and its employees." Plf.'s Mot. for Summ. J. Exh. 1 at 2. Aside from taking cues from documents placed before him, however, Mr. Kirshner was not able to state specific facts about the nature of plaintiff's duties or the allocation of her time sufficient to raise genuine issues of material fact.[1] For example, when asked whether he, "as corporate representative," knew "what percentage of [plaintiff's] time would have been spent on what would be considered exempt functions," Mr. Kirshner responded, "I just don't know." Kirshner trans. at 21. Later, when pressed on the same matter, Mr. Kirshner said he did not know "what percentage of [plaintiff's] time after the reorganization was taken up

---

1. This does not mean that Mr. Kirshner had no knowledge of the duties plaintiff performed while in defendant's employ. In fact, as counsel argued at the July hearing, Mr. Kirshner displayed familiarity with numerous aspects of plaintiff's responsibilities. *See, e.g.,* Trans. at 34–41.

by things she inherited" from the departed human resources director. *Id.* at 48–49. Thus, Mr. Kirshner's deposition testimony did not even suggest that plaintiff spent the majority of her time on "administrative" duties. *See id.* at 70, 96, 103, 112–13; *see also* Trans. at 10 (admission of defense counsel that Mr. Kirshner "could not answer ... the percentage of time which [plaintiff] spent on certain duties and responsibilities").

The Kirshner testimony also failed to raise material questions about whether plaintiff performed tasks that affected, carried out, or executed company policy, or that required the customary or regular exercise of discretion and independent judgment. Most visibly, when asked about the specific nature of duties that plaintiff performed—namely, whether they were clerical or "administrative"—Mr. Kirshner repeatedly responded that he could not offer an informed answer. For instance, Mr. Kirshner said that he did not "have a sufficient knowledge of the software to know what decisions are made" when entering information into the human resources/payroll database. Kirshner trans. at 97. He gave a similar response when discussing making payroll adjustments, *id.* at 98, making additions and deletions to employees' change of benefits coverage, *id.* at 99, and ordering temporary employees. *Id.* at 100–01.

When Mr. Kirshner professed more specific knowledge, his testimony was deficient in one of two respects. First, on several occasions Mr. Kirshner stated that plaintiff's functions were exempt in character. *See id.* at 98–102 (referring to numerous of the tasks discussed in I.B.1). But, strikingly, he provided no explanation or support for his conclusory statements, and no detailed factual predicate for his hypotheses; as unsubstantiated legal conclusions, these statements cannot as a matter of law raise genuine issues of material fact. The second shortcoming of Mr. Kirshner's remaining testimony was that when he detailed particular functions that plaintiff performed, he described ones not classifiable as "administrative." For example, at the hearing counsel highlighted Mr. Kirshner's testimony that plaintiff made computer inputs with respect to payroll, 401(k)

contribution changes, and reimbursement account information, and that she cut checks and transmitted payroll. Trans. at 34 (quoting Kirshner trans. at 40–41). Defendant has not attempted to argue that these tasks qualified as administrative, and it is clear as a matter of law that they did not.

In the other examples noted by counsel, Mr. Kirshner testified that plaintiff "approved payment for" medical reimbursements after checking if the request met certain criteria, helped perform calculations with respect to individuals being "processed ... out," and "worked [with Mr. Kirshner] on quarterly statements to the employees about their retirement accounts." Trans. at 36–37, 38–39. These tasks, however, are the type that the regulations consider non-administrative, in that none required exercising discretion or independent judgment, but only "determin[ing] whether specified standards are met." 29 C.F.R. § 541.207(c)(1). This conclusion is clear from Mr. Kirshner's descriptions of the duties; he referred to the medical reimbursements function as requiring only the application of "a set of regs that says this type of expense is covered, this is not," Kirshner trans. at 45–46, and he described the calculations and quarterly statements work as entailing "number crunching, putting in the numbers from the employees [sic] records and finding out how much they were due." *Id.* at 39 (quoted statement of plaintiff's counsel's, with which Mr. Kirshner expressed agreement). Accordingly, because Mr. Kirshner detailed no new functions (other than those considered in I.B.1, *supra* ) capable of being described as "administrative," his deposition testimony raised no new factual allegations; as a matter of law, then, it does not—even when considered with plaintiff's testimony, Mr. Hoagland's testimony, and internal documents—present genuine issues of material fact sufficient to defeat summary judgment.

C.

Defendant attempts to overcome the weaknesses of these sources with reliance on the factual allegations of a former employee, Melissa Kurtz. Def.'s Opp. Exh. 7. Kurtz stated her contentions in an affidavit ("Kurtz

affidavit") that was sworn to and subscribed July 1, 1998, nineteen days after plaintiff filed its motion for partial summary judgment and five days before defendant filed its opposition. In her affidavit, Ms. Kurtz professes "personal knowledge of [plaintiff's] day-to-day duties and responsibilities" while employed by defendant. Kurtz Aff. ¶ 6. Tracking the language of the DOL regulations, the affidavit contends that plaintiff's "primary duties consisted of work directly related to management policies or general business operations of AF & PA," and that plaintiff's "performance of such primary duties included work requiring the exercise of discretion and independent judgment." *Id.* ¶¶ 6–7.

Plaintiff contests the validity of introducing the Kurtz affidavit into the record for purposes of summary judgment. Pl.'s Reply at 1. The basis of her challenge is Federal Rule of Civil Procedure 30(b)(6), which prescribes the procedure for deposing a corporate party. Rule 30(b)(6) provides that when a party notices a corporation for deposition, the latter "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify." Fed.R.Civ.P. 30(b)(6). The Rule further sets out that "[t]he persons so designated shall testify as to matters known or reasonably available to the organization." *Id.* In her notice of deposition, plaintiff requested designation of a corporate representative who could answer questions about, *inter alia,* "[p]laintiff's employment history with [d]efendant [sic] including positions held, duties, hours worked, supervisors and representations made to [p]laintiff by defendant and its employees." Plf.'s Mot. for Summ. J. Exh. 1. It is undisputed that defendant did not designate Ms. Kurtz as a corporate representative, and defendant does not contend that all information contained in the Kurtz affidavit was incorporated into the deposition testimony of Messrs. Kirshner and Hoagland.

In light of this factual predicate, plaintiff reads Rule 30(b)(6) as precluding defendant from adducing from Ms. Kurtz a theory of the facts that differs from that articulated by the designated representatives. Plaintiff's theory is consistent with both the letter and spirit of Rule 30(b)(6). First, the Rule states plainly that persons designated as corporate representatives "shall testify as to matters known or reasonably available to the organization." Fed. R.Civ.P. 30(b)(6). This makes clear that a designee is not simply testifying about matters within his or her own personal knowledge, but rather is "speaking for the corporation" about matters to which the corporation has reasonable access. *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C.1996), *aff'd United States v. Taylor,* 166 F.R.D. 367 (M.D.N.C.1996) (quoting 8A Charles Alan Wright *et al.,* Federal Practice and Procedure, § 2103, at 36–37 (2d ed.1994)). By commissioning the designee as the voice of the corporation, the Rule obligates a corporate party "to prepare its designee to be able to give binding answers" in its behalf. *Ierardi v. Lorillard, Inc.,* 1991 WL 158911, at *3 (E.D.Pa. Aug.13, 1991); *Taylor,* 166 F.R.D. at 361 (designee "presents the corporation's 'position' on the topic") (internal citation omitted). Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition. *See Ierardi,* 1991 WL 158911, at *3; *Taylor,* 166 F.R.D. at 362.

That, however, is precisely what the Kurtz affidavit serves to do in the instant case. In the clearest example of the manner in which it revises the positions taken at the 30(b)(6) depositions, the affidavit claims that plaintiff performed various tasks that it characterizes as "directly related to management policies or general business operations," Kurtz Aff. ¶ 6, and that such tasks "comprised at least 50%" of plaintiff's work. *Id.* This quantitative assertion contrasts sharply with the positions taken by representatives Kirshner and Hoagland, each of whom failed to quantify the portion of plaintiff's duties that consisted of such putatively administrative work. *See, e.g.,* Kirshner trans. at 47, 49, 96, 112–13. Since the DOL regulations reserve the administrative exemption for employees whose primary duties consist of work direct-

ly related to management policies or business operations, the Kurtz affidavit's quantitative assertion works a substantial revision of defendant's legal and factual positions. This eleventh hour alteration is inconsistent with Rule 30(b)(6), and is precluded by it.

Defendant attempted at oral argument to evade this result by claiming that it had no legal duty to designate a since-departed employee, and that the responses of Mr. Kirshner evidenced adequate preparation for the 30(b)(6) deposition. *See, e.g.,* Trans. at 5, 10, 29. In a limited sense, defendant is correct; it has no duty to designate any particular individual, and Mr. Kirshner displayed familiarity with the areas of inquiry. But plaintiff is not asking the Court to levy Rule 37 sanctions on defendant for improper designation or inadequate preparation of its designees. *See, e.g., Resolution Trust Corp. v. Southern Union Co.,* 985 F.2d 196, 197–98 (5th Cir.1993); *Taylor,* 166 F.R.D. at 363. What plaintiff seeks instead is to prevent consideration of the Kurtz affidavit at the summary judgment stage because it states legal and factual positions that vary materially with those taken by the corporate representatives. Since defendant has not made a showing that the affidavit's particular allegations were not "reasonably available" at the time of the depositions, Rule 30(b)(6) requires such relief.[2]

■ This result is supported not just by the text of Rule 30(b)(6) but by the purposes underlying its promulgation. Foremost among those purposes, according to the Advisory Committee Notes, is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." Fed.R.Civ.P. 30(b)(6) advisory committee's note. In other words, the Rule aims to prevent a corporate defendant from thwarting inquiries during discovery, then staging an ambush during a later phase of the case. *Cf. Ierardi,* 1991 WL 158911, at *3 ("The very purpose of discovery is to avoid trial by ambush.") (internal citations omitted). This objective guides operation of the Rule irrespective of whether the corporate party has improper motives. Thus, without having to probe defendant's intentions in this case, it is clear that allowing it to introduce the Kurtz affidavit at this juncture would produce the very result that the Rule aims to forestall. If Ms. Kurtz was—as her affidavit suggests—so closely involved with the human resources department while plaintiff worked there, surely the information she has come forward with was equally well-known at the time plaintiff sought to depose a corporate representative. Defendant's failure to produce it then—either by designating Ms. Kurtz as its representative[3] or by preparing its designees to represent what Kurtz knew—clearly violated Rule 30(b)(6).

At the July 14 hearing, defendant claimed that it was not ambushing plaintiff—and thus not violating Rule 30(b)(6)—because throughout its answers and interrogatories it identified Ms. Kurtz as plaintiff's supervisor and as "as someone who was knowledgeable about [plaintiff's] hours of work." Trans. at 6. Defendant's citations, while accurate, do not support its ultimate legal position. Rule 30(b)(6) does not require a corporate party to facilitate preparation of its opponent's legal case; but it binds the corporate party to the positions taken by its 30(b)(6) witnesses so that opponents are, by and large, insulated from trial by ambush. Defendant's identification of Ms. Kurtz as a knowledgeable party did not provide the protection contemplated by Rule 30(b)(6), since the specific assertions in Ms. Kurtz's affidavit vary in critical respects from those made by the corporate representatives. Defendant's argument cannot forestall the conclusion that introduction

---

2. Representative Kirshner testified at his deposition that he spoke to Ms. Kurtz about plaintiff's case in the months prior to the deposition. Kirshner trans. at 103.

3. Defendant's argument that it could not designate Ms. Kurtz as its corporate representative because she no longer worked for it at the time

of the deposition is unavailing. Rule 30(b)(6) provides that the corporation can designate any "persons who consent to testify on its behalf." Fed.R.Civ.P. 30(b)(6). Defendant has made no allegation that Ms. Kurtz refused to testify on its behalf, and her sworn affidavit is evidence of her willingness to cooperate.

of the Kurtz affidavit would constitute a violation of Rule 30(b)(6).

The cure for this violation should not be simply to give plaintiff a chance to depose Ms. Kurtz. If such were the remedy, corporate parties would have every incentive to "bandy" or attempt "trial by ambush," as the only downside to their strategy would be that their adversary might eventually procure access to their theretofore-concealed witness. This incentive structure would eviscerate the force of Rule 30(b)(6), and would delay litigation, heighten suspicions, and obfuscate the discovery process. Rule 30(b)(6) was designed to prevent such consequences, and in order to adhere to its terms, it is improper to consider the Kurtz affidavit for purposes of plaintiff's motion for summary judgment.

## D.

Even if it were proper, under Rule 30(b)(6), to consider the substance of the Kurtz affidavit, defendant would still fail to satisfy the Rule 56(e) standard for defeating a motion for summary judgment. Pursuant to that standard, defendant must allege specific disputed facts that would enable a factfinder to conclude that between November 1995 and January 1997 plaintiff was subject to the administrative exemption of § 213(a)(1) of the Act. As a matter of law, defendant has not met this threshold requirement.

■ As an initial matter, the Kurtz affidavit addresses the nature of plaintiff's duties only after "the beginning of 1996," the point at which Ms. Kurtz attained "personal knowledge of [plaintiff's] day-to-day duties and responsibilities . . . ." Kurtz Aff. ¶ 5. Because Ms. Kurtz lacked such knowledge of plaintiff's duties pre–1996, the affidavit does not establish that plaintiff was exempt from the Act during the entire period at issue. As to the period during which Ms. Kurtz is assumed to have had knowledge of plaintiff's duties, the affidavit alleges, in language that tracks the DOL regulations, that plaintiff was exempt because her "primary duties consisted of work directly related to management policies or general business operations of AF & PA," and because her "performance of such primary duties included work requir-

ing the exercise of discretion and independent judgment." Kurtz Aff. ¶¶ 6–7. The affidavit attempts to support these assertions with descriptions of the duties plaintiff performed, but under the DOL regulations such descriptions do not, as a matter of law, state disputed issues of material fact that could support defendant's position.

■ Even if it were assumed, arguendo, that the Kurtz affidavit alleges sufficient material disputed facts with respect to whether plaintiff's "primary duty" was administrative under 29 C.F.R. §§ 541.103, 541.206, it fails to achieve similar success with respect to the questions of whether plaintiff's work was "directly related to management policies or general business operations" and required the customary and regular "exercise of discretion and independent judgment." To reiterate, the DOL regulations explain that the phrase "directly related to management policies or general business operations" "limits the exemption to persons who perform work of substantial importance to the management or operation of the business." 29 C.F.R. § 541.205(a). That phrase, in turn, is defined to include not only those who "participate in the formulation of management policies or in the operation of the business as a whole," but also to those whose "work affects policy or whose responsibility is to execute or carry it out." *Id.* at § 541.205(c).

Through the Kurtz affidavit, defendant purports to allege that plaintiff "was responsible for implementing AF & PA's policies and procedures." Kurtz Aff. ¶ 6. In support of this assertion, the affidavit first states that plaintiff "independently conducted new employee orientations and exit interviews in which she *reviewed and explained* all AF & PA policies and procedures and *answered questions* concerning such policies and procedures." *Id.* (emphasis added). It then contends that plaintiff "continuously *received and answered questions* from AF & PA employees concerning payroll and various human resource issues . . . ." *Id.* (emphasis added). Finally, the affidavit asserts that plaintiff "actively participated in meetings with New York Life representatives with me

and Mr. Kirshner concerning all aspects of AF & PA's medical plan." *Id.*

As a matter of law, these duties do not rise to the level of executing or carrying out management policies. To begin with, defendant implicitly equates reviewing and explaining policies, and receiving and answering questions, with affecting and implementing corporate policies. This is facially unpersuasive. There is a clear and pivotal difference between duties that involve putting management policies into effect and duties that involve informing other employees about those policies. Both require knowledge and understanding of such policies, to be sure; but administrative duties described by the DOL regulations require a position of sufficient authority to enable an employee to decide how such policies will be put into place. The Kurtz affidavit does not allege facts that could support a conclusion that plaintiff held such a position. Moreover, the mere fact of participation in meetings with insurance company representatives is not illustrative of performance of administrative duties, as it does not suggest that plaintiff played a role in shaping the characteristics of defendant's medical insurance plan.

Also, the affidavit does not support a conclusion that plaintiff's primary duties "included work requiring the exercise of discretion and independent judgment." *Id.* ¶ 7. The entirety of defendant's position on this issue again is expressed in the Kurtz affidavit:

> After June, 1996 through January 17, 1997, Ms. Rainey was the only employee consistently in the Human Resources Department, and therefore, she effectively managed many aspects of the Department. Before I answered any questions directed to me relating to AF & PA policies and procedures, confirmed the answer with Ms. Rainey to ensure compliance with AF & PA policies and procedures. In addition, Ms. Rainey determined whether employee requests for reimbursement of medical expenses should be approved by analyzing whether the medical expense was covered by AF & PA's Cafeteria Plan.

*Id.* This passage first indicates that defendant effectively concedes that, at least until June 1996, when she became the only "consistent" employee in the human resources department, plaintiff did not perform duties involving the "exercise of discretion and independent judgment." Defendant can point to no evidence, even a conclusory statement in an affidavit, that suggests that between November 1995 and June 1996 plaintiff "customarily and regularly exercise[d] discretion and independent judgment." 29 C.F.R. § 541.2(b). As a matter of law, then, defendant has not presented disputed issues of material fact supporting a conclusion that plaintiff was exempt during that period.

Even when it purports to offer evidence for the period after June 1996, defendant cannot satisfy the criteria set forth in the DOL regulations. As noted above, the regulations define the exercise of discretion and independent judgment as involving "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). The regulations continue, however, by stating that the term "has been most frequently misunderstood and misapplied by employers and employees in casing involving . . . [c]onfusion between the exercise of discretion and independent judgment . . . and the use of skill in applying techniques, procedures, or specific standards . . . ." *Id.* at § 541.207(b). More explicitly, the regulations state: "An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met . . . is not exercising discretion and independent judgment within the meaning of § 541.2." *Id.* at § 541.207(c)(1).

The Kurtz affidavit makes a three-pronged attempt to bring plaintiff within the sweep of this clause. First, it alleges that because plaintiff was the "only consistent employee" in the human resources department from June 1996 through her resignation, a fortiori she "effectively managed many aspects of the Department." Kurtz Aff. ¶ 7. Even if, for purposes of argument, the Court could overlook use of the term "managed," it could not take the broad leap from the mere fact of plaintiff's consistent presence to the conclu-

sory implication that she exercised discretion and independent judgment. Such a leap is neither supported by particularized factual allegations concerning the work plaintiff performed nor by common sense.

The second prong of defendant's effort is Ms. Kurtz's statement that, before she answered questions about company policy and procedure, she confirmed them with plaintiff to ensure compliance. Once again, all defendant has done is alleged that plaintiff was familiar with management policies and procedures; it has not in any way suggested that by entertaining Ms. Kurtz's questions plaintiff exercised discretion or independent judgment. The Kurtz affidavit's final attempt is to observe that plaintiff determined whether to approve employee requests for reimbursement of medical expenses by analyzing whether the expense was covered by the company plan. Though it may reasonably be construed as entailing the exercise of some judgment, this work unquestionably involved application of plaintiff's "knowledge in following prescribed procedures," "determining which procedures to follow," or "determin[ing] whether specified standards are met." 29 C.F.R. § 541.207(c)(1), tasks that pursuant to § 541.2 of the regulations do not involve the exercise of discretion or independent judgment. *Id.*

Accordingly, even considering the Kurtz affidavit, defendant has not alleged disputed issues of material fact to support the conclusion that plaintiff was employed in an administrative capacity. Therefore, plaintiff is entitled to a declaratory judgment that she was improperly classified as exempt from § 207(a) of the Act, such that she is entitled to an award of unpaid overtime compensation.

## II.

In addition to declaratory judgment, plaintiff's motion for summary judgment seeks an award of unpaid overtime compensation and liquidated damages. Section 216 of the Fair Labor Standards Act provides: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compen-

sation ..., and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (1988 & West Supp.1998). The lone exception to this rule is contained in § 260 of the Act, which authorizes a court, "in its sound discretion, [to] award no liquidated damages or award any amount thereof" if the employer can demonstrate "to the satisfaction of the court that the act or omission giving rise to such action was in good faith *and* that [it] had reasonable grounds for believing that [its] act or omission was not a violation" of the Act. 29 U.S.C. § 260 (1988) (emphasis added). Since "double damages are the norm, single damages the exception," our court of appeals has affirmed that "an employer who has violated the Act bears a substantial burden" of proof. *Kinney v. District of Columbia,* 994 F.2d 6, 12 (D.C.Cir. 1993) (citations and internal quotation marks omitted).

### A.

 It is well-settled in this Circuit that to meet its evidentiary burden with respect to § 260's good faith prong, an employer must show "an honest intention to ascertain what the ... Act requires and to act in accordance with it." *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 464 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (citation and internal quotation marks omitted); *see also Dove v. Coupe,* 759 F.2d 167, 175–76 (D.C.Cir.1985) (requiring "an affirmative showing of a genuine attempt to ascertain what the law requires"). Defendant has conceded that a court is to assess whether good faith and a reasonable basis existed *"at the time the [classification] decision was made."* Def.'s Opp. at 17 (emphasis in original).

Defendant attempts to carry its burden by asserting that its former director of human resources, Kitty Reilly, "was aware of the requirements of the FLSA and made the decision to classify Rainey as exempt in the position of Benefits/Payroll Assistant based upon her duties and responsibilities." Def.'s Opp. at 18. Were there evidence to substantiate defendant's contention—even in the form of a statement by Reilly that she was familiar with the provisions of the FLSA—

defendant might have made a colorable claim. But defendant supports its statement with a citation to its answers to plaintiff's interrogatories, wherein it merely acknowledged that Reilly "participated in the classification" of plaintiff's position. Def.'s Mot. for Summ. J. Exh. E at 3. Because this statement neither demonstrates Reilly's familiarity with the Act nor suggests an effort by her to "ascertain what the law requires," *Dove*, 759 F.2d at 175–76, it alone cannot satisfy defendant's burden with respect to the question of good faith.

Defendant also invokes two internal memoranda indicating management familiarity with the Act and evidencing an effort to square company policies with it. *See* Def.'s Opp. Exhs. 8, 10. Yet these documents are dated August 1, 1996 and December 2, 1996, respectively, no less than nine months after plaintiff was reclassified as exempt from the Act's overtime provisions. *See* Plf.'s Stmt. of Mat. Facts at ¶ 13 (tracing reclassification to November 1995); Def.'s Resp. to Plf.'s Stmt. of Mat. Facts at ¶ 13 (accepting timeline). The memoranda, therefore, cannot serve as evidence of a good faith effort to ascertain the law at the time of reclassification—which defendant has acknowledged to be the relevant moment of inquiry—and as such cannot prevent a liquidated damages award.

### B.

The same conclusion is warranted with respect to the reasonable basis prong of § 260, which in this Circuit is measured by "an objective test." *Kinney*, 994 F.2d at 12 (citing *Laffey*, 567 F.2d at 464). Defendant contends that "it was reasonable ... to believe that [plaintiff] was exempt from the overtime requirements" of the Act because

she "took on progressively more exempt, managerial duties and responsibilities as needs increased and human resources staffing decreased." Def.'s Opp. at 21. Even assuming, arguendo, that over time plaintiff took on more duties properly characterized as "administrative," the reasonable basis inquiry mandates taking a snapshot of her duties at the time of reclassification—well before plaintiff took on duties of the departed human resources manager and human resources director in June 1996.

Defendant, however, has made no effort to argue that in November 1995 plaintiff's primary duties were administrative within the meaning of the DOL regulations; even its most forceful factual contentions do not describe plaintiff's duties until several months after reclassification. *See* Kurtz Aff. ¶ 5 (professing "personal knowledge of [plaintiff's] day-to-day duties and responsibilities" only "[f]rom the beginning of 1996"). This is a fatal weakness, for the regulations make plain than an employee's "primary duties" must be administrative in order to be subject to the exemption. 29 C.F.R. § 541.2. Accordingly, having presented no evidence of an objectively reasonable basis for believing at the time of reclassification that plaintiff met the regulatory criteria, defendant has not carried its burden of proof.[4] *Kinney*, 994 F.2d at 12. Plaintiff's motion for summary judgment as to unpaid overtime and liquidated damages therefore is granted.

### III.

Defendant contends in its motion for partial summary judgment as to damages that even assuming liability, plaintiff is not entitled to overtime compensation at a rate of

---

4. Defendant's position is further eroded by the testimony of Mr. Kirshner, who said that neither he nor the corporation knew whether plaintiff was classified as exempt pursuant to the administrative or professional exemption in § 213 of the Act. Kirshner trans. at 125. The DOL regulations define a professional employee as, *inter alia*, someone whose primary duty consists either of "[w]ork requiring knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study" or "[w]ork that is original and creative in character in a recognized field of artistic endeavor." 29 C.F.R. § 541.3(a)(1), (2) (1998). It is beyond dispute that plaintiff, whose educational background does not extend beyond a college bachelor's degree in English, has had no training in a "field of science or learning" contemplated by the regulations and that she did not perform work for defendant "in a recognized field of artistic endeavor." The inability of defendant's corporate representative (and general counsel), even upon preparation for a deposition, to rule out the patently unavailable professional exemption is a telling indication that defendant has not carried its burden under § 260.

one and one-half times her regular rate. 29 U.S.C. § 207(a) (1988). Instead, defendant submits that the formula that should govern calculation of damages is the so-called fluctuating workweek method set forth at 29 C.F.R. § 778.114 (1998). This argument is inconsistent with the plain meaning of the DOL regulations.

## A.

Generally speaking, the fluctuating workweek method is designed for situations in which an employee's hours fluctuate from week to week and in which that employee receives a salary that is intended to compensate her "as straight time pay for whatever hours [s]he is called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.114(a). The applicability of the fluctuating workweek method is governed by the DOL regulations, which provide:

> Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

*Id.* (parentheses in original).

It is well-settled—and manifest upon a plain reading—that this provision breaks down into five discrete criteria: 1) there must be a clear mutual understanding between the parties; 2) the employee's hours must fluctuate from week to week; 3) the employee must receive the same fixed salary regardless of the number of hours she worked during a particular week; 4) the salary must be sufficient to provide an average hourly compensation of more than the minimum wage; and 5) the employee must receive extra compensation, in addition to

such salary, for all overtime hours worked. *See, e.g., Griffin v. Wake County,* 142 F.3d 712, 715 (4th Cir.1998); *Condo v. Sysco Corp.,* 1 F.3d 599, 602 (7th Cir.1993), *cert. denied,* 510 U.S. 1110, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994). Defendant does not dispute that these five criteria must be met in order for the fluctuating workweek method to control. Def.'s Mot. for Summ. J. at 17.

Applying these factors to the instant case, defendant asserts that all five have been satisfied, and that the fluctuating workweek method thereby is triggered. *Id.* at 17, 23. It is beyond dispute, to be sure, that plaintiff's hours fluctuated on a weekly basis, *see id.* at 18, that she received the same salary regardless of the number of hours she worked during a particular week, *id.,* and that her salary was sufficient to compensate her at a regular rate of more than the minimum hourly wage. *Id.* It is also beyond dispute, however, that plaintiff did not receive any overtime compensation—aside from during a two-week period—after she was reclassified as exempt from the Act in November 1995; defendant, in fact, concedes this point in at least three separate filings. Def.'s Resp. to Pl.'s Stmt. of Mat. Facts ¶ 13; Def.'s Mot. for Summ. J. at 20, 22; Def.'s Resp. to Pl.'s Interrogs., Def.'s Mot. for Summ. J. Exh. E at 7. Not surprisingly, defendant has made no effort to substantiate its claim that the overtime criterion has been met, even in spite of its broader assertion that the fluctuating workweek method is appropriate. Since contemporaneous payment of overtime compensation is a necessary prerequisite for application of the fluctuating workweek method, as a matter of law defendant has failed to prove that "all the legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present." 29 C.F.R. § 778.114(c). *See Griffin,* 142 F.3d at 715, 717–18 (approving use of fluctuating workweek method because employees were "paid an overtime premium of one-half their regular hourly rate for hours worked in excess of forty per week"). *See also Roy v. County of Lexington,* 141 F.3d 533, 547 (4th Cir.1998) (same); *Condo,* 1 F.3d at 600 (same); *Highlander v. K.F.C. Nat'l Management Co.,* 805 F.2d 644, 647–48 (6th

Cir.1986) (same). *Cf. Mayhew v. Wells,* 125 F.3d 216, 219 (4th Cir.1997) (approving use of method where employees received additional compensation in the form of compensatory time off).

■ Defendant attempts to avoid this conclusion by suggesting implicitly that the overtime payment criterion is satisfied if overtime is awarded as a remedial measure. In other words, it argues that even if no overtime was paid contemporaneous to the disputed events, the fluctuating workweek method can still be used, as a matter of law, so long as overtime is paid retroactively. Defendant's interpretation runs counter to the plain meaning of the DOL regulations. Specifically, 29 C.F.R. § 778.114 makes clear that the fluctuating workweek method can be used only if the employee "receives extra compensation, in addition to [the fixed] salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay." 29 C.F.R. § 778.114(a). This provision contains no suggestion that such compensation need only be paid as part of a judicially crafted remedy, but rather establishes that it is a necessary precondition to application of the fluctuating workweek method.

Defendant's invocation of *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135 (5th Cir.1988), to support its position is unavailing. In *Blackmon,* a panel of the Fifth Circuit upheld the lower court's determination that the employees were improperly classified as exempt from the Fair Labor Standards Act, but then reversed the award of one and one-half times overtime compensation. This component of the court's holding, upon which defendant seeks to rely, was not supported by any explanation or effort to analyze the relevant statutory and regulatory language. Without a principled basis upon which to overlook defendant's failure to pay plaintiff overtime, and in light of the regulations' unambiguous language and the great weight of legal authority, defendant has failed to carry its burden with respect to the fluctuating workweek method. *See Griffin,* 142 F.3d at 715, 717–18; *Roy,* 141 F.3d at 547; *Condo,* 1 F.3d at 600; *Highlander,* 805 F.2d at 647–48.

**B.**

■ Even if the regulations do not require contemporaneous payment of overtime, however, defendant still has failed to satisfy its burden of proving a "clear mutual understanding." 29 C.F.R. § 778.114(a). Attempting to make this showing, defendant focuses on plaintiff's side of the equation, underscoring that she evidenced a clear understanding that after the reorganization she would receive a fixed salary regardless of the number of hours she worked in a particular week. Def.'s Mot. for Summ. J. at 19–23. As proof, defendant invokes plaintiff's deposition testimony that it was her "understanding that [she] wouldn't be paid overtime," *id.* at 19; it also points to plaintiff's admission that she "never objected or complained that she failed to receive overtime compensation," *id.* at 20, and asserts that plaintiff "intentionally stopped maintaining a record of her overtime hours ...." *Id.* Defendant then cites numerous court decisions that it construes as support for its claim that such factual averments prove that a clear understanding existed. *Id.* at 14–16.

Without deciding whether defendant neutralizes all factual issues concerning plaintiff's alleged "understanding" of the post-reorganization terms of employment, *see* Pl.'s Opp. at 16, the Court finds that defendant has not proven—and indeed cannot prove—the existence of a clear *mutual* understanding necessary to trigger the fluctuating workweek method. Defendant contends that the fluctuating workweek method is "the proper method of computing damages in a case in which an employee is classified exempt and paid a fixed salary with the understanding she would receive her salary regardless of the number of hours worked each week." Def.'s Mot. for Summ. J. at 12. *See also* Def.'s Reply at 3. Thus, defendant's reasoning goes, even though an employer misclassifies an employee as exempt, it can still pay that employee a one-half rate for overtime if the parties had a clear understanding that a fixed salary would be sufficient compensation for the employee's fluctuating hours.

Defendant's theory is logically inconsistent with the provisions of the Act and its attendant regulations. The Act, to reiterate, establishes the baseline presumption that employees are covered by § 207, which mandates

payment of overtime at a rate of one and one-half times the hourly rate for hours worked in excess of forty per week. Two exceptions to this general rule are relevant here. First, the Act provides that employees are exempt entirely from § 207's mandate if the nature of their work falls within one of the categories prescribed in § 213. Second, the DOL regulations establish that employees covered by the principles of § 207—in other words, non-exempt from the Act—can be paid a different rate of overtime compensation if they satisfy certain criteria outlined in those same regulations; an example of a varying rate being paid to non-exempt employees is the one-half hourly rate paid pursuant to the fluctuating workweek method. *See Griffin,* 142 F.3d at 715 (fluctuating workweek method "does not represent an 'exception' to FLSA. It merely provides an alternative means by which an employer can determine its employees' regular and overtime rate of pay.") (quoting *Flood v. New Hanover County,* 125 F.3d 249, 252 (4th Cir. 1997)). *See also Condo,* 1 F.3d at 603; Def.'s Mot. for Summ. J. at 11.

The structural framework of the Act and the DOL regulations undercuts defendant's claim that it had a "clear mutual understanding" with plaintiff. Defendant has maintained consistently that after November 1995 plaintiff was employed in an administrative capacity that rendered her exempt from § 207(a) of the Act. If plaintiff were in fact exempt, she clearly would not have been entitled to any overtime compensation, no matter how computed, as the provisions for overtime compensation apply only to employees not exempt from § 207(a). Yet defendant insists that all along it had a clear mutual understanding with plaintiff, one defined by the regulations as encompassing an understanding that overtime premiums would be paid. *See* 29 C.F.R. § 778.114(a) ("a clear mutual understanding ... that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek ...") (parentheses in original). Defendant cannot credibly argue both sides of the same coin.

If defendant believed that plaintiff was exempt from § 207(a), such that she was entitled to no overtime compensation, then it was not possible for it to have had a clear mutual understanding with plaintiff that she was subject to a calculation method applicable only to non-exempt employees who are entitled to overtime compensation. If the parties had originally agreed that plaintiff's compensation would be governed by the fluctuating workweek method, then defendant would have had to have conceded from the start that plaintiff was covered by § 207(a). This defendant clearly has not done. Therefore, as a matter of law, no clear mutual understanding existed between the parties, precluding defendant from a summary judgment regarding damages. Furthermore, in light of the conclusion reached in Section I above that plaintiff should have been classified as non-exempt, overtime compensation is to be awarded according to the one and one-half time rate set forth in § 207(a) of the Act.[5]

---

5. In light of this analysis, it is not necessary to address plaintiff's argument that she "was coerced through threat of job loss to assume additional duties." Pl.'s Opp. at 14. This component of plaintiff's opposition to defendant's motion for summary judgment was not challenged by defendant.